UNITED STATES DISRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GREG DUGAS,

    Plaintiff,

v.

BRIAN WITTRUP, et al.,

    Defendants.

Case No.: 2:15-cv-67
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Norah McCann King

## OPINION & ORDER

This matter is before the Court on Plaintiff's Objections (ECF No. 20) to the Magistrate Judge's Order and Report and Recommendation (ECF No. 13) denying Plaintiff's Motion to Compel and recommending denial of Plaintiff's Motion for a Temporary Restraining Order (ECF No. 2). For the reasons that follow, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** the Magistrate Judge's Order and Report and Recommendation. The Court therefore **DENIES** Plaintiff's Motion for a Temporary Restraining Order (ECF No. 2) and Motion to Compel (ECF No. 10). The Court also **OVERRULES** Plaintiff's Objection (ECF No. 22) to the Magistrate Judge's Order (ECF No. 19) Denying Plaintiff's Motion For Findings of Fact and Conclusions of Law on the Rule 52(b) Motion (ECF No. 18). The Court therefore **ADOPTS** that Magistrate Judge Order (ECF No. 19) and **DENIES** Plaintiff's Motion (ECF No. 18).

## I. BACKGROUND

Plaintiff, while incarcerated at Belmont Correctional Institution, was allegedly approached by an inmate who was part of the "Bloods" gang. (Compl. at 4-5.) That inmate demanded Plaintiff carry drugs for him, which had a "prison street value of three-thousand dollars." (*Id.* at 5.) Plaintiff took the drugs but subsequently flushed them down the toilet. He

1

then testified against the inmate, who had his security level increased and was transferred out of Belmont to a higher security facility. (*Id.*) Plaintiff alleges that, because of his testimony against a gang member and to protect him against retaliatory attacks, he was granted protective control status and transferred to Chillicothe Correctional Institution ("CCI").

At CCI, Plaintiff was placed in the general population. On November 8, 2014, five days after his arrival, Plaintiff alleges that he was playing pool when "three black inmates walked to the door of the game room asking for 'Missouri,'" Plaintiff's known nickname at the Belmont facility. (*Id.* at 15.) Plaintiff had not told anyone at CCI about his nickname and so he was not identified. After this encounter, Plaintiff's pool partner informed him that the three inquiring inmates "were Blood 'enforcers' and that he didn't know who 'Missouri' was but he wouldn't want to be 'Missouri.'" (*Id.*)

Subsequently, Plaintiff refused to lockdown in his assigned area, which prison officials construed as a request for protective control. (*Id.* at 15-16.) Plaintiff provided a sworn statement to CCI's protective control committee in support of his request. (*Id.* at 16.) He also advised CCI's Warden and Defendant Wittrup that while he was in Belmont's segregation unit, the Blood's "'shot-callers' were actively attempting to carry out a retaliation there, by attempting to order [Plaintiff's] cell mates to assault him[] [but Plaintiff's] cell mates at that time were not 'under' the Bloods' hierarchal command and . . . did not carry out the assault." (*Id.* at 17.) Nevertheless, "the entire time" that Plaintiff was in Belmont's segregation unit, "Blood gang members repeatedly threatened [Plaintiff] that they would 'send' for him on any prison yard in the State of Ohio he went to." (*Id.*)

A case manager investigated Plaintiff's allegations and denied his request to be placed in protective control at CCI. (Arledge Aff. ¶ 11; ECF No. 5-1.)

2

> According to the Investigation Report, [Plaintiff's] request to be placed in protective control was denied because there was no evidence found to support [Plaintiff's] allegation that there were inmates at CCI looking for him; [Plaintiff] was unable to provide any names of the inmates with whom he was playing pool or the names of the inmates looking for him at CCI. Further, [Plaintiff] has a history of attempting to secure transfers to other prisons by collecting rule violations in order to secure an individual cell, rather than being placed in the dorms inhabited by the general population.

(*Id.* at ¶ 12.) Plaintiff appealed this decision administratively, and Defendant Wittrup likewise denied the request for protective control. (Compl. ¶ 16.)

Plaintiff then brought this lawsuit under 42 U.S.C. § 1983, alleging that Defendant Wittrup was deliberately indifferent to a substantial risk of serious harm to Plaintiff when he denied the request for protective control status and incarcerated Plaintiff with CCI's general population. He further alleged that Ohio's classification and transfer policies are flawed, creating unsafe environments. Plaintiff also moved for a temporary restraining order, seeking an order directing Defendant Wittrup to re-classify Plaintiff to protective control status and to transfer him out of CCI until his current sentence expires. Subsequently, Plaintiff filed a Motion to Compel Disclosure of Evidence.

The Magistrate Judge issued an Order and Report and Recommendation, denying Plaintiff's Motion to Compel and recommending that his Motion for a Temporary Restraining Order be denied. The Magistrate Judge held that Plaintiff failed to establish a strong likelihood of success on the merits, concluding that the allegations were speculative as they he failed to identify a threat to his safety from any specific inmate. (Opn. at 12; ECF No. 13.) Moreover, Plaintiff had not shown that the defendants knew of and disregarded an excessive risk to his safety. Plaintiff now objects.

## II. MOTION FOR A TEMPORARY RESTRAINING ORDER

Upon receiving Plaintiff's objections to the Magistrate Judge's recommendation to deny the Motion for a Temporary Restraining Order, the District Judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the District Judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.; see also* 28 U.S.C. § 636(b)(1)(C). The Court also notes that a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than are formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

Where, as here, the adverse party has been given notice of the requested injunctive relief, the application is properly treated as one for a preliminary injunction. *See Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004). The decision whether to grant a request for interim injunctive relief falls within the sound discretion of the district court. *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982); *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). An injunction, however, is an extraordinary remedy that should be granted only after a court has considered the following four factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citing *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997)). A preliminary injunction should not issue where there is simply no likelihood of success on the merits. *Mich. State AFL-CIO v.*

*Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). "Moreover, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003). Plaintiff, as the movant, bears the burden of establishing that "the circumstances clearly demand" this extraordinary relief. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). And the Court recognizes that "[w]here a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting." *Schuh v. Michigan Dep't of Corr.*, No. 1:09-CV-982, 2010 WL 3648876, at *1 (W.D. Mich. July 26, 2010) *report and recommendation adopted*, No. 1:09-CV-982, 2010 WL 3655654 (W.D. Mich. Sept. 16, 2010) (citing *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984)).

Plaintiff alleges that Defendant was deliberately indifferent to his safety in violation of his constitutional rights. Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). To establish liability under the Eighth Amendment for Defendant's alleged failure to protect Plaintiff, Plaintiff must show that Defendant was deliberately indifferent "to a substantial risk of serious harm." *Id.* at 828. Plaintiff must make an objective showing that he is incarcerated under conditions that pose a substantial risk of serious harm. *Id.* at 837. And Plaintiff must show make a subjective showing that Defendant knew of and disregarded an excessive risk to Plaintiff's safety. *Id.* This means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

As the Magistrate Judge correctly held, Plaintiff has not made either showing. While one inmate's threat to another is sufficiently serious to satisfy the objective component, a "general concern" about safety from unidentified inmates does not suffice. *See Williams v. McLemore*, 247 F. App'x 1, 10 (6th Cir. 2007) (citing *Gant v. Campbell,* 4 F. App'x. 254, 256 (6th Cir.2001)). Here, Plaintiff did not identify any threat from any specific inmate at CCI. He does not identify the Blood "enforcers" or the other inmate allegedly present for the encounter. And an investigation into these allegations revealed "no evidence . . . to support [Plaintiff's] allegation that there were inmates at CCI looking for him." (Arledge Aff. ¶ 12.) Thus, Plaintiff has failed to make the requisite objective showing. And Plaintiff similarly has not shown that Defendant knew that plaintiff faced a substantial risk of serious harm and disregarded that risk. To the contrary, CCI conducted an investigation but found no evidence of an actual, particularized threat to Plaintiff's safety. (Arledge Aff. ¶¶ 11-12.) And, Plaintiff had been in segregation at CCI and "has not been harmed and does not claim that he has been harmed since his arrival."[1] (Arledge Aff. ¶¶ 13-14.) *See Bogan v. Brunsman*, No. 1:11-CV-259, 2013 WL 360357, at *6 (S.D. Ohio Jan. 30, 2013) *report and recommendation adopted*, No. 1:11CV259, 2013 WL 754262 (S.D. Ohio Feb. 27, 2013) ("[I]dentification of a prisoner's enemies is critical to the prison's ability to protect a prisoner because it is the prison officials, not the prisoner, who must determine whether there is a substantial risk of harm that warrants a transfer or other action."). Indeed, Plaintiff in his Objections "concedes that, standing alone," the "CCI pool hall facts . . . fall short of the deliberate indifference analysis." (Obj. at 25; ECF No. 13.)

---

[1] Plaintiff informed the Court in his Objections that he has recently been transferred to Lebanon Correctional Institution, which according to Plaintiff is a "very dangerous and unforgiving prison." (Obj. at 28.) To the extent that he relies on this latest transfer to support his Motion for a Temporary Restraining Order, these allegations offer no support for the same reason as the CCI allegations.

Plaintiff nevertheless asserts that that Magistrate Judge erred because she did not look to the "totality of the circumstances" and account for the Belmont incident, which "clearly overrides the CCI pool hall incident." (Obj. at 13.) But while Plaintiff identified the inmate at Belmont who forced him to carry drugs, he does not remain under threat from this inmate. Prison officials transferred that inmate to a different, higher security facility and transferred Plaintiff to CCI to protect him against retaliatory attacks from fellow gang members. (Compl. at 5-6, 12, 14.) Plaintiff presses that his transfer to CCI was not a reasonable response by prison officials in light of the gang threat that he faces. (Obj. at 27.) *See Farmer*, 511 U.S. at 830 (stating that a "prison official's duty under the Eighth Amendment is to ensure 'reasonable safety'"). The record does not bear this contention, however, as Plaintiff's transfer removed him from Belmont and the threatening inmate and placed him in a new facility where Plaintiff is unable to specify any articulable threat. *Cf. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992) ("The fact that the defendants knew that SPSM housed many violent prisoners and that prison violence did occur is not sufficient to constitute deliberate indifference."). Thus, the Belmont incident does not show that prison officials disregarded a substantial risk of harm. *See Farmer*, 511 U.S. at 837.

Plaintiff also challenges the Magistrate Judge's conclusion by arguing that prison officials are deliberately indifferent to the danger he faces from the entire Blood prison gang— "all of its Ohio prison chapters"—and not "just one single inmate." (Obj. at 11, 25.) But this argument again resorts to generalized allegations that cannot establish a deliberate indifference claim. *See Gant v. Campbell,* 4 F. App'x 254, 256 (6th Cir.2001) (finding no Eighth Amendment violation for failure to protect where the plaintiff did not identify any particular gang members whom he feared); *see also Bogan*, 2013 WL 360357, at *6 (same).

Because Plaintiff has not established a strong likelihood of success on the merits, the Magistrate Judge correctly held that interim injunctive relief should not issue. *See Michigan State AFL-CIO*, 103 F.3d at 1249. Thus, the Court overrules Plaintiff's objections and denies his Motion for a Temporary Restraining Order.

### III. MOTION TO COMPEL

Plaintiff also challenges the Magistrate Judge's denial of his Motion to Compel (ECF No. 10). The Magistrate Judge denied the motion because Plaintiff had not served an initial discovery request on Defendant through Defendant's counsel and thus failed to show that there was a discovery dispute that the parties were unable to resolve. There was no error in this holding, as Plaintiff still fails to point to any such dispute. *See Morrison v. Taurus Int'l Co.*, No. 3:11-CV-322, 2012 WL 3156823, at *1 (S.D. Ohio Aug. 3, 2012) ("Local Rule 37.1 requires that, before filing a motion to compel, counsel shall have first exhausted among themselves all extrajudicial means for resolving the differences.") (internal quotation marks omitted). Plaintiff's Motion to Compel is therefore denied.

### IV. SUBSEQUENT OBJECTION

Plaintiff also objects to a subsequent Magistrate Judge Order that denied his Motion For Findings of Fact and Conclusions of Law on the Rule 52(b) Motion. He asserts that the Magistrate Judge erred in reaffirming her earlier conclusion because Plaintiff challenged it "under Rule 52(b)[] when [he] asked [the Magistrate Judge] to take mandatory judicial notice of the $3,000 debt [he] owed . . . to the Blood gang 'hierarchy.'" (Obj. at 5; ECF No. 22.) Plaintiff requests the Court inform him why the "new or additional" facts do no alter the Court's analysis. (Obj. at 6; ECF No. 22.) But as the Court explained above, Plaintiff has not identified a specific

threat that he currently faces to show that prison officials are acting with deliberate indifference. Thus, Plaintiff's Objections are overruled and his motion is denied.

## V. CONCLUSION

For the reasons stated above, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** the Magistrate Judge's Order and Report and Recommendation (ECF No. 13).[2] The Court therefore **DENIES** Plaintiff's Motion for a Temporary Restraining Order (ECF No. 2) and Motion to Compel (ECF No. 10). The Court also **OVERRULES** Plaintiff's Objection (ECF No. 22) to the Magistrate Judge's Order (ECF No. 19) Denying Plaintiff's Motion For Findings of Fact and Conclusions of Law on the Rule 52(b) Motion (ECF No. 18). The Court therefore **ADOPTS** that Magistrate Judge Order (ECF No. 19) and **DENIES** Plaintiff's Motion (ECF No. 18).[3]

**IT IS SO ORDERED.**

3-10-2015
DATE

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[2] Plaintiff also apparently objected to the Magistrate Judge's Order denying his request for leave to file an Amended Complaint. (*See* Obj. at 2; ECF No. 20 ("Also, pl. OBJECTS to Maj. 'Opinion and Order' dated Feb. 2, 2015.").) Plaintiff does not explain why this order was in error. And, the Court discerns no reason to disturb it.
[3] Plaintiff also filed a letter with the Court asking for the Magistrate Judge to be disqualified. (ECF No. 23.) The Court finds this request frivolous and without merit.