IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GREG DUGAS,

        **Plaintiff,**

    **vs.**                             **Civil Action 2:15-cv-67**
                                                **Chief Judge Sargus**
                                                **Magistrate Judge King**

BRIAN WITTRUP,

        **Defendant.**

**ORDER AND**
**REPORT AND RECOMMENDATION**

        Plaintiff, formerly incarcerated by the State of Ohio at the Chillicothe Correctional Institution ("CCI"), brings this action under 42 U.S.C. § 1983 against Brian Wittrup, Chief of the Bureau of Classification for the Ohio Department of Rehabilitation and Correction ("ODRC"), alleging that defendant was deliberately indifferent to a serious risk of harm to plaintiff's safety in violation of plaintiff's constitutional rights. This matter is now before the Court on plaintiff's motion for summary judgment, ECF No. 51 ("*Plaintiff's Motion*"), *see also* ECF No. 61 ("*Plaintiff's Formal Summary Judgment Briefing and Motion to Amend*"), and defendant's motion for summary judgment, ECF No. 100 ("*Defendant's Motion*"). For the reasons that follow, *Plaintiff's Formal Summary Judgment Briefing and Motion to Amend* is **DENIED;** it is **RECOMMENDED** that the *Plaintiff's Motion* be **DENIED** and that *Defendant's Motion* be **GRANTED**.

## I.   ODRC classification system and protective control

The ODRC maintains a classification system "that creates a process for the classification of inmates according to their security risk." ODRC Department Policy No. 53-CLS-08, *available at* http://www.drc.ohio.gov/web/drc_policies/drc_policies.htm ("Policy No. 53-CLS-08"); *United States v. Newsome*, 2014 U.S. Dist. LEXIS 150659, at *2-3 (S.D. Ohio Oct. 23, 2014) ("Public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice."). The assignment of each inmate to a particular institution is based on "the needs of the offender, the safety of persons in the institution, and the operational stability of the institution." Policy No. 53-CLS-08(V). An inmate may be immediately transferred to protective control under the following circumstances:

   a.   The inmate meets the criteria for a Level 4 or Level 5 classification as set forth in Department Policies 53-CLS-01, Inmate Security Classification Levels 1 through 4; 53-CLS-04, Level 5 Classification; and 53-CLS-06, Inmate Security Classification Level 4 at OSP [the Ohio State Penitentiary].

   b.   The inmate's continued presence in the current institution has a detrimental effect on the safety, security, or good order of the institution; and,

   c.   The detention of the inmate in a segregation unit at the current institution will not be sufficient to address the needs of the institution.

ODRC Department Policy No. 53-CLS-08(VI)(A)(1). Once granted protective control status, inmates are transferred to the Allen Oakwood Correctional Institution ("Allen Oakwood"), the only state institution with a protective control unit. *Affidavit of Paul*

2

*Arledge*, ¶ 8 (*"Arledge Affidavit"*), attached as Exhibit 1 to *Defendant's Motion*.[1]

The ODRC also maintains procedures for physically separating particular inmates "when there is reason to believe that the inmates could be harmed by being in close proximity to one another, and/or their presence together could jeopardize the security and safety of the institution, staff, and/or other inmates."  ODRC Department Policy No. 53-CLS-05(V), *available at* http://www.drc.ohio.gov/web/drc_policies/drc_policies.htm ("Policy No. 53-CLS-05").  The separation order may be "institution separations" or "local separations."  Policy No. 53-CLS-05(VI).  An institution separation is "[a]n order wherein two or more inmates are not assigned to general population in the same institution due to a concern for the safety and security of the institution, staff and/or other inmates."  Policy No. 53-CLS-05(IV).  A local separation is "[a]n order wherein two or more inmates are not permitted to be assigned to the same living and/or work area, and are not permitted simultaneous involvement in the same recreational or leisure time activities to ensure they are not in close proximity with one another."  *Id*.

An inmate may also request a transfer to another facility.  *See* ODRC Department Policy No. 53-CLS-09, *available at* http://www.drc.ohio.gov/web/drc_policies/drc_policies.htm ("Policy No.

---

[1] Mr. Arledge is an investigator at CCI who is familiar with the protective control request investigation process.  *Id*. at ¶¶ 5-6.

53-CLS-09").[2]  However, "[a]n inmate has no right to receive a transfer and one may only be granted when it serves a legitimate penological reason."  Policy No. 53-CLS-09(VI)(A)(3).  More specifically, the ODRC may transfer inmates to other facilities

> in order to encourage and support visiting with pro-social members of the general community, to participate in programs advertised as open for enrollment at the discretion of Managing Officers, for OPI job assignment, and/or to address specific criminogenic needs. This policy applies solely to inmate initiated transfers and an inmate may only request a transfer for the reasons outlined in this policy.

Policy No. 53-CLS-09(V).  Inmates may appeal the denial of a transfer request to the Bureau of Classification.  Policy No. 53-CLS-09(VI)(A)(9).

## II.  Factual Background and Procedural History

While he was incarcerated at the Belmont Correctional Institution ("BeCI"), plaintiff requested to be placed in protective control.  *Arledge Affidavit*, ¶ 7.  His request was denied, but he was granted a transfer from BeCI to CCI in lieu of protective control.  *Id.*  After he arrived at CCI on November 3, 2014, plaintiff again requested that he be placed in protective control because he feared gang retaliation in the general population.  *Id.* at ¶¶ 7, 10, 14; *Plaintiff's Declaration in Support of Summary Judgment*, ECF No. 62, ¶ 2 ("*Plaintiff's Summary Judgment Declaration*").  Case Manager Shane Stevens investigated plaintiff's allegations and denied plaintiff's

---

[2] This policy does not apply to inmates assigned to classification Levels 4 and 5.  Policy No. 53-CLS-09(III).

request to be placed in protective control at CCI. *Arledge Affidavit*, ¶ 11.

> According to the Investigation Report, Dugas's request to be placed in protective control was denied because there was no evidence found to support Dugas's allegation that there were inmates at CCI looking for him; Dugas was unable to provide any names of the inmates with whom he was playing pool or the names of the inmates looking for him at CCI. Further, Dugas has a history of attempting to secure transfers to other prisons by collecting rule violations in order to secure an individual cell, rather than being placed in the dorms inhabited by the general population.

*Id.* at ¶ 12. Plaintiff was placed in segregation on November 8, 2014 through at least January 9, 2015 (date of *Arledge Affidavit*) and was not harmed during that period of time. *Id.* at ¶ 14.

On January 7, 2015, plaintiff instituted this action under 42 U.S.C. § 1983, naming Brian Wittrup as the only defendant. Plaintiff alleges that defendant was deliberately indifferent to a substantial risk of serious harm to plaintiff when defendant denied plaintiff's request for protective control status and assigned plaintiff to CCI's general population. *See generally Complaint*. Plaintiff also alleges that the State of Ohio's classification and transfer policies are flawed, creating unsafe environments in its facilities. *Id*. The *Complaint* seeks injunctive relief as well as nominal and punitive damages. *Id.* at pp. 3-4, 9-10; *Declaration of Plaintiff*, ECF No. 1-1, p. 13, attached to *Complaint* ("*Plaintiff's Complaint Declaration*").

Plaintiff has moved for summary judgment and apparently seeks to amend the *Complaint* in order to name additional defendants. *See Plaintiff's Motion; Plaintiff's Formal Summary Judgment Briefing and Motion to Amend*. On December 10, 2015, defendant opposed *Plaintiff's*

*Motion* and moved for summary judgment in the same filing. *See Defendant's Motion*. Plaintiff has neither filed a reply in support of *Plaintiff's Motion* nor has he responded to *Defendant's Motion*.[3]

## III. Request to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 reinforces "the principle that cases 'should be tried on their merits rather than the technicalities of the pleadings.'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). The grant or denial of a request to amend a complaint is left to the broad discretion of the trial court. *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party,

---

[3] On December 14 and 30, 2015, mail addressed to plaintiff at the address provided by him was returned to the Court as undeliverable. *See* ECF Nos. 101, 103. The Court further notes that plaintiff has an affirmative duty to advise the Court of any change in his address. *See*, *e.g.*, *Barber v. Runyon*, No. 93-6318, 1994 U.S. App. LEXIS 9709, 1994 WL 163765, at *1 (6th Cir. May 2, 1994) ("If [pro se Plaintiff's] address changed, she had an affirmative duty to supply the court with notice of any and all changes in her address."); *Lewis v. Miller*, 2013 U.S. Dist. LEXIS 158982, at *2 (S.D. Ohio Nov. 6, 2013) ("'[I]t is the obligation of every litigant to update the Court with his current address, failing which, litigation may become subject to dismissal for failure to prosecute.'") (quoting *Aden v. Herrington*, No. 1:12-cv-86, 2012 U.S. Dist. LEXIS 153392, at *3 n.1 (S.D. Ohio October 25, 2012)). *See also A Guide for Pro Se Civil Litigants Representing Yourself in the United States District Court for the Southern District of Ohio* (effective July 1, 2013), p. 14 (advising that *pro se* litigants must promptly notify the Court and opposing parties in writing of any change in address and warning that "[**i**]**f you fail to keep the Court informed of your current address/telephone number, your case may be dismissed for lack of prosecution**") (emphasis in original).

bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)). "To survive a motion to dismiss, a [claim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In the case presently before the Court, plaintiff seeks leave to amend the *Complaint* in order to join the following individuals as defendants: "CCI Warden Jenkins, MACI [Madison Correctional Institution ("MaCI")] Warden Richard, MACI Deputy Warden Bogan, CCI Investigator Paul Arledge, MACI Captain Connolly, MACI Sergeant Gilliam, and MACI John Doe Officers to be Named Following Discovery[.]" *Plaintiff's Formal Summary Judgment Briefing and Motion to Amend*, p. 1. Plaintiff also apparently intends to name Shane Stevens, CCI unit manager, as an additional defendant. *See id.* at 1,

7

19-22.  As an initial matter, however, the Court notes that plaintiff previously abandoned his request for leave to amend the *Complaint* in order to add MaCI officials as defendants.  *See Onmibus Motion*, ECF No. 29, PAGEID#:286-289 (seeking leave to amend in order to add various MaCI officials as defendants); *Notice*, ECF No. 95, p. 2 (stating that plaintiff "WAIVES all other pending motions other than Doc #s 51, 61, 62, 63, as MOOT") (emphasis in original); *Order and Report and Recommendation*, ECF No. 99, p. 4 (noting plaintiff's intent to waive motions, including, *inter alia*, ECF No. 29, and directing the Clerk to remove ECF No. 29 from the Court's pending motions list); *Order*, ECF No. 102 (adopting the *Order and Report and Recommendation*). Although plaintiff did not specifically waive his request to amend contained in *Plaintiff's Formal Summary Judgment Briefing and Motion to Amend*, *see Notice*, ECF No. 29, the record is, at best, ambiguous as to whether or not he intends to pursue his request for leave to amend in order to name additional defendants.

In any event, however, plaintiff's request for leave to amend the *Complaint* is defective and futile.  Plaintiff has not tendered a proposed amended complaint, leaving the Court to guess as to the facts and authority supporting plaintiff's proposed amendment.  *See generally Plaintiff's Formal Summary Judgment Briefing and Motion to Amend*.  To the extent that the Court is able to glean plaintiff's proposed allegations from his request to amend, plaintiff apparently alleges that proposed defendant Shane Stevens was aware that plaintiff faced gang retaliation at CCI because plaintiff, while incarcerated at

8

BeCI, flushed a gang member's $3000.00 worth of drugs down a toilet.

*Id*. at 19-22.  Plaintiff goes on to allege the following:

> Mandatory Judicial Notice of Adjudicative fact Pursuant to
> Fed. R. Evid. 201(d)
>
> Unit Manager Shane Stevens had in his possession and
> control at all relevant times to these events a full,
> working knowledge of Dugas' very serious #3,000 "condition"
> of his confinement by and through Dugas' sworn affidavits,
> and through BECI Unit Manager Ruiz' entry of findings into
> the ODRC computer databasis [sic], and other means.
>
> Mr. Stevens simply acted with deliberate indifference
> to Dugas' "substantial risk of serious harm" id., and took
> the position in his capacity as a prison official to "let
> nature take its course." id. (By failing to grant Dugas
> protective control).
>
> Mr. Stevens has plainly violated Dugas' <u>Eighth
> Amendment to the United States Constitution</u>.
>
> > B.)  As to Defendant Paul Arledge CCI Investigator
> >      Same
> >
> > C.)  As to Defendant Jenkins CCI Warden
> >      Same
> >
> > D.)  As to Defendant Richard MACI Warden
> >      Same
> >
> > E.)  As to Defendant Bogan, MACI Deputy Warden
> >      Same

*Id*. at 22-23 (failing to refer to proposed defendants MaCI Captain

Connolly and MaCI Sergeant Gilliam).  In support of his motion for

summary judgment, plaintiff similarly avers:

> That I, Greg Dugas, have provided a full paper trail to
> defendants Stevens, Arledge, Jenkins, Richard, Boga, and
> Wittrup, supplying them, and informing them, in their
> individual, personal, and official capacities of my need
> for protection, ie, "protective control," and each named
> defendant is duly ON RECORD as having ACTUAL KNOWLEDGE of
> my $3,000 "condition" of confinement and of my "substantial
> risk" of gang retaliation in Ohio's general populations:

> EACH DEFENDAND [sic] DENIES SAID <u>inference</u> of risk and
> DENIES me protective control.

*Plaintiff's Summary Judgment Declaration*, ¶ 2 (emphasis in original).

The Court previously denied plaintiff's request to amend the *Complaint* to join Mr. Stevens as a defendant. *Opinion and Order*, ECF No. 14, pp. 4-5 (concluding, *inter alia*, that the proposed allegations against Mr. Stevens were futile because, *inter alia*, he investigated plaintiff's request for protective control status at CCI and took steps to ensure plaintiff's safety). Plaintiff's current allegations against the remaining proposed defendants[4] are no more than a formulaic recitation of the elements of his Eighth Amendment claim and legal conclusions. As such, these allegations are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *See*, *e.g.*, *Twombly*, 550 U.S. at 555. To the extent that the above recitation contains any factual allegations, the Court cannot say that these generalized and ambiguous assertions are sufficient to allow the Court to draw the reasonable inference that the proposed defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. For all these reasons, and for the reasons discussed *infra*, the Court concludes that plaintiff's request for leave to amend the complaint to join additional defendants is futile and is therefore **DENIED**.

## IV. Motions for Summary Judgment

### A. Standard

The standard for summary judgment is well established. This

---

[4] As noted *supra*, plaintiff fails to specifically address proposed defendants MaCI Captain Connolly and MaCI Sergeant Gilliam.

standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *Catrett,* 477 U.S. at 323.  Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson,* 477 U.S.

11

at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial").  "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations.  It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'"  *Glover v. Speedway Super Am. LLC,* 284 F. Supp.2d 858, 862 (S.D. Ohio 2003)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, the non-moving party must support the assertion that a fact is genuinely disputed.  Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover,* 284 F. Supp.2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)).  Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties."  *Id.  See also* Fed. R. Civ. P. 56(c)(3).

## B.  Discussion

Plaintiff seeks injunctive relief against defendant Wittrup.

Plaintiff was transferred from CCI on approximately September 28, 2015, and is no longer in the custody of the ODRC. *Notice*, ECF No. 96. As this Court previously determined, plaintiff's request for injunctive relief is now moot in view of the fact that plaintiff is not currently incarcerated at CCI. *Order and Report and Recommendation*, ECF No. 99, p. 5; *Order*, ECF No. 102 (adopting the *Order and Report and Recommendation*). Accordingly, to the extent that plaintiff seeks summary judgment on his claims for injunctive relief, *Plaintiff's Motion* is not well-taken.

Plaintiff also seeks monetary damages against defendant. Although not specified in the *Complaint*, plaintiff apparently sues defendant, a state employee, in his official and individual capacities. *See Plaintiff's Summary Judgment Declaration*, ¶ 2. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wolfel v. Morris*, 972 F.2d 712, 718-719 (6th Cir. 1992). The Eleventh Amendment bars a suit for money damages against state agencies and employees in their official capacity unless the State has waived its immunity or Congress has overridden immunity under § 5 of the Fourteenth Amendment. *Will*, 491 U.S. at 65. The State of Ohio has not waived its immunity to suit in this Court, nor has Congress abrogated the state's immunity in connection with plaintiff's claims. Accordingly, plaintiff's claims for money damages under 42 U.S.C. § 1983 against defendant in his official capacity is barred by the

13

Eleventh Amendment. *See*, *e.g.*, *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (holding that, to the extent the plaintiff sought monetary damages from state prison employees in their official capacity, Eleventh Amendment immunity barred such claims).

As to his remaining claim for money damages against defendant in his personal capacity, plaintiff asserts a claim of deliberate indifference pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. To succeed on a claim for a violation of § 1983, a plaintiff must establish that (1) a person (2) acting under color of state law (3) deprived him of his rights secured by the United States Constitution or its laws. *See Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001). Because § 1983 is a method for vindicating federal rights, and is not itself a source of substantive rights, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Section 1983 merely provides a vehicle for enforcing individual rights found elsewhere and does not itself establish any substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

14

In the case presently before the Court, plaintiff initially alleged that defendant was deliberately indifferent to plaintiff's safety in violation of his rights under the Fourteenth Amendment to the United States Constitution. *See*, *e.g.*, *Complaint*, pp. 18-21, 27-29, 43. However, this Court later determined, and plaintiff now apparently concedes, that it is the Eighth Amendment's deliberate indifference standard that applies to his claim. *See Order and Report and Recommendation*, ECF No. 13, pp. 10-11; *Opinion and Order*, ECF No. 24; *Plaintiff's Motion*, pp. *See also Lanman v. Hinson*, 529 F.3d 673, 680-81 (6th Cir. 2008) (stating that the due process clause of the Fourteenth Amendment provides protection to a pretrial detainee). Because plaintiff is a convicted prisoner in the custody of ODRC at all times relevant to the *Complaint*, *Complaint*, pp. 1-2; *Arledge Affidavit*, ¶¶ 7, 9, 13, it is the Eighth Amendment that applies to plaintiff's claim.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks and citation omitted). *See also Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). To establish liability under the Eighth Amendment for defendant's alleged failure to protect plaintiff from inmate violence, plaintiff must show that defendant Wittrup was deliberately indifferent "to a substantial risk of serious harm." *Farmer*, 511 U.S. at 828. Deliberate indifference contains both an objective and subjective component and the plaintiff bears the burden of demonstrating both. *Farmer*, 511

15

U.S. at 833, 837; *Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. 2008); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001)). Although, "[i]n the abstract, one prison inmate's threat to the health and safety of another inmate is 'sufficiently serious' to satisfy" the objective component, a "general concern" about safety from unidentified inmates does not satisfy this component. *Williams v. McLemore*, No. 05-2678, 247 F. App'x 1, at *9 (6th Cir. June 19, 2007) (citing *Gant v. Campbell*, No. 00-5639, 4 F. App'x 254, at *256 (6th Cir. Feb. 6, 2001)). *See also Bogan v. Brunsman*, No. 1:11-cv-259, 2013 U.S. Dist. LEXIS 12416, at *16 (S.D. Ohio Jan. 30, 2013) ("Thus, identification of a prisoner's enemies is critical to the prison's ability to protect a prisoner because it is the prison officials, not the prisoner, who must determine whether there is a substantial risk of harm that warrants a transfer or other action."), *adopted and affirmed by Bogan v. Brunsman*, No. 1:11-cv-259, 2013 U.S. Dist. LEXIS 26762 (S.D. Ohio Feb. 27, 2013).

In the case presently before the Court, plaintiff has never identified a threat to his safety from any specific inmate. Instead, he refers only of a "$3,000 'condition' of confinement and of my [plaintiff's] 'substantial risk' of gang retaliation in Ohio's general populations." *Plaintiff's Summary Judgment Declaration*, ¶ 2.[5]

---

[5] *Plaintiff's Formal Summary Judgment Briefing and Motion to Amend* purports to contain a declaration pursuant to 28 U.S.C. § 1746. *See id*. at p. 4 ("Statement of Uncontroverted Material Facts in the Form of a Formal Declaration Pursuant to 28 USC § -1746-"). Under 28 U.S.C. § 1746, unsworn declarations have the same force and effect as a sworn affidavit only if "subscribed by [the declarant], as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare (or certify, verify, or

Plaintiff's belief that he faced a generalized threat of violence is based on rank speculation. Indeed, an investigation into these allegations revealed "no evidence . . . to support Dugas's allegation that there were inmates at CCI looking for him[.]" *Arledge Affidavit*, ¶ 12. On summary judgment, plaintiff has offered nothing more than a generalized concern for his safety from unidentified inmates. Under these circumstances, plaintiff has failed to meet the objective prong of his deliberate indifference claim.

Furthermore, plaintiff has not satisfied the subjective prong of his claim, which requires that he show that defendant Wittrup knew of and yet disregarded an excessive risk to plaintiff's safety, *i.e.*, that defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Moreover, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 830 (stating that a "prison official's duty under the Eighth Amendment is to ensure 'reasonable safety'") (citation omitted)). In the case presently before the Court, plaintiff has failed to show that defendant was aware of facts showing that plaintiff faced a

---

state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" 28 U.S.C. § 1746(2). Although plaintiff's declaration is made under penalty of perjury, it is not dated. This failure violates the strict requirements of Section 1746 and the Court therefore need not consider this defective declaration. *See*, *e.g.*, *Bonds v. C.W. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) (excluding from consideration affidavits that were subscribed under penalty of perjury, but were undated).

substantial risk of serious harm or that defendant drew such an inference. As noted *supra*, CCI conducted an investigation following plaintiff's request for placement in protective control but discovered no evidence of an actual, particularized threat to plaintiff's safety. *Arledge Affidavit*, ¶¶ 11-12 (averring further that plaintiff "was unable to provide any names of the inmates with whom he was playing pool or the names of the inmates looking for him at CCI"). Moreover, plaintiff was in segregation at CCI from November 8, 2014, until at least January 9, 2015 and "has not been harmed and does not claim that he has been harmed since his arrival at CCI on November 3, 2014." *Id*. at ¶¶ 13-14. Indeed, although he was not released from CCI until September 2015, *see Notice*, ECF No. 96, plaintiff offers no evidence that he was specifically threatened or harmed prior to his release. Therefore, nothing in the present record establishes either that defendant was aware that plaintiff faced a substantial risk of serious harm or failed to respond reasonably to any such risk. *See Farmer*, 511 U.S. at 830, 837. *Cf. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992) ("The fact that the defendants knew that SPSM housed many violent prisoners and that prison violence did occur is not sufficient to constitute deliberate indifference."). Accordingly, plaintiff's claim for monetary damages against defendant in his personal capacity is without merit.

For the same reasons that plaintiff's motion for summary judgment, ECF No. 51, lacks merit, the Court concludes that *Defendant's Motion,* ECF No. 100, must be granted.

18

**WHEREUPON**, *Plaintiff's Formal Summary Judgment Briefing and Motion to Amend*, ECF No. 61, is **DENIED**. It is **RECOMMENDED** that plaintiff's motion for summary judgment, ECF No. 51, be **DENIED** and that defendant's motion for summary judgment, ECF No. 100, be **GRANTED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

January 11, 2016                              *s/Norah McCann King*
                                              Norah McCann King
                                       United States Magistrate Judge